**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES**
**OF AMERICA,**

              Respondent,              **CASE NO. 07-CR-20607**

       vs.

                                        **DISTRICT JUDGE LAWRENCE P. ZATKOFF**

**CORDELL SAIN,**                       **MAGISTRATE JUDGE MONA K. MAJZOUB**

              Petitioner.
_____/

## REPORT AND RECOMMENDATION

Petitioner, Cordell Sain, is currently a prisoner at FCI Milan in Milan, Michigan. Before the Court are Petitioner's Motion for Leave to file Memorandum of Law (docket no. 37) and Motion to Vacate under 28 U.S.C. § 2255 (docket no. 37). The Motions have been referred to the undersigned for consideration. (Docket no. 40.) After additional briefing as discussed herein, Petition and the Government presented evidence at a hearing held on September 5, 2014. The undersigned has reviewed the pleadings and now issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(b).

**I.      RECOMMENDATION**: For the reasons stated herein, Petitioner's Motion to Vacate under 28 U.S.C. § 2255 (docket no. 38) should be **GRANTED IN PART AND DENIED IN PART**. The Court should grant Petitioner's Motion with regard to his ineffective-assistance of counsel claims and deny his Motion with regard to his Tenth Amendment and Fourth Amendment claims.

Additionally, having considered it as part of Petitioner's argument, the Court should **GRANT**

1

Petitioner's Motion for Leave to File a Memorandum of Law (docket no. 37).

## II.    REPORT:

### A.    Facts and Procedural History

On November 11, 2007, Petitioner was arrested at 15686 Saratoga in Detroit, Michigan (the Saratoga House), after police found him in the home along with a gun, several vials of marijuana, a digital scale, and two letters addressed to Petitioner. (*See* docket no. 57 at 8.) When officers approached the home, it was a "clean house" with no broken windows, drapes in the windows, carpeting on the floor, and a "sparsely furnished" first floor. (Docket no. 59 at 75-74.) Sergeant Cory Karssen testified at the September 5, 2014 evidentiary hearing that the front door of the home was slightly ajar and the heat was on, but the electric box had been "jumped." (*Id.*)

Sergeant Karssen noted that he and two other officers approached the home and saw Petitioner "walking up from the rear of the house into the dining room." (*Id.* at 71.) Sergeant Karssen stated that they asked Petitioner who owned the house, to which Petitioner responded, "I don't know, I'm just squatting here." (*Id.*) Petitioner contends that he never made such a statement because he owned his own home on Bringarud Drive with his wife, and he was just spending the night at the Saratoga House. (*Id.* at 61-63.) Petitioner asserts that told officers the house was owned by a man named "Tone" and that Petitioner was just spending the night because he had a fight with his wife. (*Id.*) He further asserts that he told the officers that Tone had gone out for food and that he would be back in 10 or 15 minutes. (*Id.* at 61.)

The officers handcuffed Petitioner in the living room and searched the rest of the house. (*Id.* at 62, 72.) In a back bedroom where Petitioner had been sleeping, the officers opened a dresser drawer where they found a gun, marijuana in vials, and two letters addressed to Petitioner.

2

(*See* docket no. 57 at 8.)  Petitioner asserts that the two letters were in the pocket of the pants that he was wearing at the time of his arrest.  (Docket no. 59 at 63.)  The officers also found a digital scale on top of the dresser.  (*See* docket no. 57 at 8.)

Petitioner was arrested for "[t]resspassing a vacant dwelling" (*see* docket no. 59 at 71), but charges were never filed in that matter.  Instead, in December 2007, Petitioner was indicted in a three-count federal indictment charging (1) possessing marijuana with intent to distribute, (2) being a felon in possession of a firearm, and (3) possessing a firearm in furtherance of a drug trafficking crime.  (Docket no. 7.)  In June 2008, following a two-day jury trial, Petitioner was convicted on all three counts.  (*See* docket no. 21.)

In June of 2007, however, Petitioner was charged in a separate indictment also before this Court; the matter was heard by Judge Victoria A. Roberts.  *U.S. v. Bonas et. al.*, No. 07-20309, docket no. 37 (E.D. Mich. Jun. 12, 2007) (the Judge Roberts Matter).  Petitioner was originally indicted along with nine co-defendants, but on July 24, 2007, the Government filed a Superseding Indictment adding Petitioner's brother, Lenardo Sain, as a defendant in the case before Judge Roberts  *Id.*, docket no. 58.  On August 3, 2007, Attorney Rowland Short filed an appearance for both Sain brothers.  *Id.* docket nos. 69 and 70.  On August 9, 2007, the Government filed a Notice of Penalty Enhancement in the Judge Roberts case, noting that Petitioner had been convicted of a drug-related felony by the State of Michigan in 1999, thereby subjecting him to a mandatory minimum term of 20 years in prison.  *Id.*, docket no. 91.

On November 16, 2007, five days after Petitioner's arrest at 15686 Saratoga in Detroit, the Government filed its initial federal Complaint against Petitioner (docket no. 1), and on November 28, 2007, Attorney Short filed his appearance on Petitioner's behalf (docket no. 3).  Petitioner

3

asserts (and Short acknowledges) that as the case progressed, he and Short never met at the jail where Petitioner was held, that Short did not take Petitioner's phone calls or return his letters, and that Short did not interview Petitioner's trial witnesses before trial.[1]  (*See* docket no. 58 at 5 (citing docket no. 59 at 10-12, 28-30).)  Moreover, Short failed to file any evidentiary motions on behalf of Petitioner, and he admits that he did not even consider (let alone discuss with Petitioner) the possibility that Petitioner could be exposed to consecutive 10-year sentences in this matter.  Short further admits that he did not discuss the Government's plea offers with Petitioner.  (*See id.* at 3-4 (citing docket no. 59 at 13-14, 20-21, 24, 30-31, 41-43).)

Ultimately, following Petitioner's conviction in the instant case, on July 17, 2008, Lenardo Sain secured new counsel in the Judge Roberts case.  *Bonas*, No. 07-20309, docket nos. 155, 156. On November 6, 2008, the day set for trial, after hearing that the Governments' plea offers had not been conveyed to either of the Sain brothers and that Short had not met with Petitioner in nearly 10 months (until the eve of trial), Judge Roberts granted Petitioner's Motion to have Short removed as counsel and to sever his trial; Judge Roberts also granted Lenardo Sain's Motion to Sever on the same grounds.  (*See* docket no. 25-6.)  On October 7, 2007, the day originally set for sentencing in this matter, Petitioner asked that Judge Zatkoff appoint him new counsel for purposes of sentencing; Judge Zatkoff granted the motion.  (Docket no. 24.)  Petitioner filed a Motion for a New Trial for Ineffective Assistance of Counsel in this matter on the same day Judge Roberts removed Short. (Docket no. 25.)

On November 10, 2008, the Court sentenced Petitioner to 168 months of imprisonment and

---

[1]As discussed further herein, Short's conduct with regard to Petitioner in the Judge Roberts Matter was similar.  (*See* docket no. 58 at 5 n.3 (citing docket no. 25-6 at 94-107).)

a five-year period of supervised release. (Docket no. 26.) The plea offers that had not been conveyed to Petitioner included a January 2008 offer of 87 to 93 months (*see* Def. Exh. 1(b), (c), Sept. 5, 2014 Evid. Hrg.) and a February 29, 2008 offer to dismiss Count III of the indictment, which would have reduced Petitioner's sentencing guideline range to 41 to 51 months (*see* Def. Exh. 1(a), Sept. 5, 2014 Evid. Hrg.; *see also* docket no. 57 at 5-6). On January 6, 2009, with new counsel, Lenardo Sain pled guilty in the Judge Roberts case. *Bonas*, No. 07-20309, docket no. 209. Petitioner was convicted in the Judge Roberts case and sentenced to 240 months, to be served concurrently with Petitioner's sentence in the instant matter. *Id.* docket no. 295. Additionally, as a result of his admitted misconduct as discussed herein, Attorney Short was reprimanded by the State of Michigan Attorney Discipline Board, Case No. 11-34-GA (Nov. 7, 2011), and has been barred from practicing in the U.S. District Court for the Eastern District of Michigan (*see* docket no. 59 at 15).

On July 15, 2011, following his direct appeal to the Sixth Circuit, Petitioner filed his instant Motion to Vacate under 28 U.S.C. § 2255. (Docket no. 38.) Additionally, he filed a Memorandum of Law and a Letter from Attorney Short admitting that he "did not ever adequately speak to [Petitioner] regarding the mandatory sentencing requirements." (Docket no. 44.) The Government filed a Response, asserting that some of Petitioner's grounds for relief are without merit but acknowledging that the record was undeveloped with regard to Petitioner's ineffective-assistance claims. (Docket no. 48.) At the Court's direction, Petitioner filed a Supplemental Brief, narrowing the issues to be addressed at the evidentiary hearing on September 5, 2014. (Docket no. 56.)

Following the hearing, the Government filed a Supplemental Response to Petitioner's Motion

(docket no. 57), and Petitioner filed his Post-Hearing Brief in Support of his Motion (docket no. 58).

**B.      Petitioner's Grounds for Relief**

In Petitioner's initial Motion to Vacate under 28 U.S.C § 2255, he argues that:

- his conviction violates Congress's enumerated powers under the Tenth Amendment;

- Short provided ineffective assistance when he failed to investigate and have set aside his prior drug conviction and when he failed to investigate and challenge the Government's case; and

- the Government violated his Fourth Amendment rights when they searched the Saratoga House.

(Docket no. 38 at 4.)  Additionally, in his Supplemental Brief and his Post-Hearing Brief, Petitioner

clarifies that he also asserts that Short was constitutionally ineffective when he:

- failed to move for suppression of his mail and of the other items found in the Saratoga House bedroom because (a) the search of the bedroom and (b) the seizure of his mail both violated the Fourth Amendment;

- failed to investigate and discuss with Petitioner the applicable sentencing guidelines and rules and the Government's plea offers; and

- engaged in the concurrent representation of Petitioner and Lenardo Sain in the Judge Robert's Matter while representing Petitioner in this matter.

(Docket nos. 56 and 58.)

**C.      Standard**

A petitioner who files a motion to vacate, set aside, or correct his sentence under 28 U.S.C.

§ 2255 must demonstrate that there was an error of constitutional magnitude, the sentence was

imposed outside the statutory limits, or there was an error of fact or law so fundamental as to render

the entire proceeding invalid.  *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir.2001)

(citation omitted).  To prevail on a motion to vacate, set aside, or correct sentence alleging

constitutional error, the petitioner must show that the error had a substantial and injurious effect or

6

influence on the proceedings.  *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

### D.    Analysis

#### 1.    Petitioner's Tenth Amendment Claims

Relying on *Bond v. United States*, 564 U.S. ___ (2011) for purposes of standing, Petitioner dedicates 51 pages of his memorandum of law to the proposition that Congress violated the Tenth Amendment by enacting the federal drug statutes under which he was convicted.  (*See* docket no. 44 at 23 - docket no. 44-1 at 23.)  In short, Petitioner sets forth the historical underpinnings of the Constitution's separation-of-powers principles and asserts that federal oversight of victimless crimes (such as drug crimes) is a constitutional violation because such oversight was not an enumerated power granted to the federal government.  (*Id.*)  As the Government notes, however, it is well-settled that Congress has the power to enact federal drug-trafficking laws.  *United States v. Scales*, 646 F.2d 371, 375 (6th Cir. 1972); *see also Gonzales v. Raich*, 545 U.S. 1, 15 (2005), *United States v. Leshuk*, 65 F.3d 1105, 1112 (4th Cir. 1995), *United States v. King*, 485 F.2d 353, 365 (10th Cir. 1973). Moreover, as the Government notes, in *Gonzales*, the U.S. Supreme Court went so far as to uphold federal drug-trafficking laws when they conflicted with state law.  *Gonzales*, 545 U.S. at 29. Petitioner's first claim for relief fails.

#### 2.    Petitioner's Sixth-Amendment Ineffective Assistance Claims

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish ineffective assistance of counsel, Petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id.* at 687.

These two components are mixed questions of law and fact. *Id.* at 698. Further "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. That is, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citations omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong of the *Strickland* test, the ultimate inquiry is "whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result . . . would have been different." *Id.* at 694.

### i.    Short's Failure to Investigate Petitioner's Prior Drug Conviction and Move to Have the Conviction Set Aside

As part of his sentencing in the instant matter, the Government used Petitioner's prior convictions to enhance his sentencing guidelines. (*See* docket no. 23.) The Court also noted that the convictions were a factor in its decision with regard to Petitioner's sentence. (*See* docket no. 26.) Petitioner asserts that Short's representation was constitutionally inadequate because he failed to attack his prior drug conviction and move to have it set aside prior to sentencing. (Docket no. 44

8

at 19-23.)

Petitioner argues that under *Rompilla v. Beard*, "Counsel must . . . investigate prior convictions . . . that could be used as aggravating circumstances or otherwise come into evidence. [And] if a prior conviction is legally flawed, counsel should seek to have it set aside." 545 U.S. 374, 387 n.7 (2005) (quoting ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (1989)). In *Rompilla*, the petitioner was convicted of murder, and the State of Pennsylvania informed his attorney that it intended to introduce evidence of a prior conviction for a similar crime at the penalty phase of the petitioner's trial. Although the file related to the prior conviction was readily available, the petitioner's attorney did not review the file or any of the evidence therein. The U.S. Supreme Court found that petitioner's counsel had failed to provide constitutionally adequate representation, noting as follows:

> With every effort to view the facts as a defense lawyer would have done at the time, it is difficult to see how counsel could have failed to realize that without examining the readily available file they were seriously compromising their opportunity to respond to a case for aggravation. The prosecution was going to use the dramatic facts of a similar prior offense, and Rompilla's counsel had a duty to make all reasonable efforts to learn what they could about the offense. Reasonable efforts certainly included obtaining the Commonwealth's own readily available file on the prior conviction to learn what the Commonwealth knew about the crime, to discover any mitigating evidence the Commonwealth would downplay, and to anticipate the details of the aggravating evidence the Commonwealth would emphasize. Without making reasonable efforts to review the file, defense counsel could have had no hope of knowing whether the prosecution was quoting selectively from the transcript, or whether there were circumstances extenuating the behavior described by the victim. The obligation to get the file was particularly pressing here owing to the similarity of the violent prior offense to the crime charged and Rompilla's sentencing strategy stressing residual doubt. Without making efforts to learn the details and rebut the relevance of the earlier crime, a convincing argument for residual doubt was certainly beyond any hope.

*Id*. at 385-86 (footnotes omitted).

Notably, the ABA guidelines requiring counsel to investigate and to seek to set aside a prior

conviction, to which the Court cited, only apply to death-penalty cases. *See id.* at 387 n.7. Moreover, unlike in *Rompilla*, where "the Commonwealth would attempt to establish [the petitioner's] history by proving [his] prior conviction for rape and assault, and would emphasize his violent character by introducing a transcript of the rape victim's testimony given in the earlier trial," *id.* at 383, the Government, here, merely included Petitioner's prior conviction as part of its sentencing-guideline calculation. Thus, even if he had investigated Petitioner's prior crimes, Short would have had no opportunity to present evidence on Petitioner's behalf to mitigate any of the Government's assertions; simply stated, Short could not have argued that Petitioner was not convicted of the prior crime. To the contrary, and as the Government notes, "unless there has been a previous ruling that a conviction has been ruled constitutionally invalid, or unless the conviction has been obtained when counsel has not been available or provided . . . a collateral attack on the conviction is not allowed at sentencing." *United States v. Carter*, 374 F.3d 299, 409 (6th Cir. 2004). For these reasons Petitioner's claim fails.

### ii. Petitioner's Remaining Arguments Related to Short's Representation

As discussed, *supra*, Petitioner asserts that he is entitled to relief due to Short's failure to move for suppression of the evidence discovered at the Saratoga house;[2] his failure to investigate applicable sentencing guidelines and discuss them with Petitioner; his failure to communicate with

---

[2]Although raised as an independent Fourth Amendment claim in his initial Motion, Petitioner's Memorandum of Law addresses the alleged Fourth Amendment violation as part of his ineffective-assistance claim. His supplemental briefing also joins the two issues. The Sixth Circuit has held that a Fourth Amendment claim is not cognizable as an independent ground for relief under 28 U.S.C. § 2255. *Ray v. U.S.*, 721 F.3d 758, 761-62 (6th Cir. 2013). Thus, the undersigned will address Petitioner's Fourth Amendment claims only as part of his ineffective-assistance claims.

Petitioner, including a failure to present Petitioner with the Government's plea offers; and his concurrent representation of Petitioner and his brother, Lenardo Sain. While each of these claims is raised separately or addressed separately in various briefs, they are inextricably intertwined as part of Short's general failure to provide Petitioner with constitutionally adequate representation throughout this matter. Thus, the undersigned will summarize each issue and its applicable legal framework and will also analyze Short's representation in its totality.

### a.   Motion to Suppress

It is undisputed that Short failed to move for suppression of any evidence found at the Saratoga house. Petitioner argues that he should have moved for the suppression of the gun, the marijuana vials, the digital scale, and the letters because (a) the search of the Saratoga House was improper, and (b) even if the search itself was proper, the seizure of Petitioner's mail was improper. (*See* docket no. 58 at 11-20.) The Government asserts that Short's decision not to file a Motion to Suppress in this matter "'falls within the wide range of professional assistance'" provided by an attorney and that the decision was not unreasonable because Short correctly determined that the Court would have denied the Motion and that Petitioner's statements in any related motion hearing could have been used against him at trial for impeachment purposes. (Docket no. 57 at 9-10 (quoting *Kimmelman v. Morrison*, 477 U.S. 465, 381 (1986)).)

At the September 5, 2014 evidentiary hearing in this matter, Short testified that he "believe[d] . . . erroneously . . . that the judge would have ruled that the house was vacant and that Mr. Sain did not have standing to object to the search and seizure." (Docket no. 59 at 26.) Despite Petitioner's attempt to give him information and photographs in advance, Short acknowledged that

he learned, at trial, that the house had gas, electricity, furniture, clothes in a closet, and a shoveled driveway, all of which could have been used in an attempt to persuade the Court that Petitioner had the right to privacy in the back bedroom of the Saratoga House as Tone's guest. (*Id*. at 26-27.) He further acknowledged that even if he had lost the motion, the only "down side" would have been Petitioner "possibly . . . saying something that could be used against him at trial." *Id.* at 28. Tellingly, however, Short testified that he was unaware of Supreme Court precedent that bars the use of evidentiary hearing testimony against a defendant at a later trial.[3] (*Id*.) Therefore, the undersigned finds that Short's decision to forgo a motion to suppress was not a strategic decision but was, as Petitioner argues, a result of confusion or misunderstanding of the law. *See Moore v. Johnson*, 194 F.3d 586, 610 (5th Cir. 1999) (holding that a decision is not "strategic" where counsel has "no idea" why the decision was made); *Bean v. Calderon*, 163 F.3d 1073, 1079 (9th Cir. 1998) (holding that a decision is not "strategic" where it was the result of "confusion" by counsel).

Nevertheless, regardless of whether Short's decisions were adequate under the performance prong of *Strickland*, "[w]here defense counsel's "failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Ray v. U.S.*, 721 F.3d 758, 762 (6th Cir. 2013) (quoting *Kimmelman*, 477 U.S. at 375). It is here that

---

[3]The Government asserts that Short's position was not inaccurate because a defendant's evidentiary hearing testimony can be used to impeach him at trial. (Docket no. 57 at 9 n.1 (citing *United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1291 (9th Cir. 1994); *United States v. Quesada-Rosadal*, 685 F.2d 1281, 1283 (11th Cir. 1982)).) But as Petitioner notes, he did not take the stand at trial, and there is no evidence to suggest that he intended to do so. Thus, the Government would not have had an opportunity to impeach him, and any suggestion that Short's decision was based on such a concern is speculation as best.

Petitioner's claim fails.  Even assuming, *arguendo*, that the jury verdict would have been different absent the evidence found in the Saratoga House,[3] Petitioner cannot "prove" that his Fourth Amendment claim "is meritorious."

As Petitioner states, to challenge an illegal search and seizure under the Fourth Amendment, a defendant must show that he has a legitimate expectation of privacy in the area searched or the items seized.  *Rakas v. Illinois*, 439 U.S. 128 (1978).  Moreover, that expectation of privacy must be objectively and subjectively reasonable; that is, the defendant must believe that he had an expectation of privacy, and it must be one that "society is prepared to recognize as reasonable."  *Id*. at 143 n.12.  Notably, it is a well-established principle that an overnight houseguest can have a legitimate expectation of privacy.  *Minnesota v. Olson*, 495 U.S. 91 (1990).

In support of his position, Petitioner asserts that officers violated his expectation of privacy as a guest in Tone's house when they entered without permission in the middle of the night.  (Docket no. 58 at 17.)  Petitioner testified that he believed the Saratoga House was owned by Tone and that he had been to the home on several other occasions for barbeques and other events.  (Docket no. 59 at 59-64.)  He added that he told the officers they could not come in the house and that the house belonged to Tone, who would return in 10 or 15 minutes from going to a local Coney Island.  (*Id.* at 61.)  Sergeant Karssen, however, testified that he and two other officers approached the house and believed that it was a vacant home.  (*Id.* at 71.)  He stated that he knocked on the front door and entered when no one answered, which is when he saw Petitioner walking to the living room from the back bedroom.  (*Id.*)  He further testified that when he asked Petitioner whose house it was,

---

[3]There is a reasonable probability that the Government would have been unable to meet its burden of proving that Petitioner committed the drug-related and weapon-related offenses without introducing the drugs or the weapon at trial.

Petitioner stated, "I don't know, I'm just squatting here," at which time he placed Petitioner under arrest for trespassing in a vacant dwelling. (*Id.*)  There is no dispute that the officers then searched the house, where they ultimately found the drugs, weapon, and digital scale in the bedroom.  With regard to Petitioner's mail, however, Sergeant Karssen testified that the officers found the mail in the dresser drawer along with the marijuana and the gun, while Petitioner testified that the mail was in his pocket.

There is no dispute that if Tone owned the Saratoga House, the officers would have violated Petitioner's Fourth Amendment rights by entering the home and searching the dresser drawer under the circumstances involved in this matter.  Additionally, (with the exception of Petitioner's mail) there is no dispute that the admissibility of the evidence found in the bedroom and Petitioner's asserted expectation of privacy turn on his subjective belief that Tone owned the Saratoga House; that is, if Petitioner were, in fact, "just squatting" at the house and he was not a guest, he would not have standing to challenge the search.  Thus, the merits of Petitioner's Fourth Amendment claims would turn on whether the Court accepted Petitioner's version of events or the officers' version of events.[4]  Likewise, the Court must determine based solely on Petitioner's and the officers' testimony whether the mail was found in Petitioner's pants or in the dresser drawer.  While the undersigned finds that Petitioner could have succeeded in a well-argued  motion to suppress, particularly in light of the furniture in the Saratoga House, the shoveled driveway, and Petitioner owning a home with his wife on another street, such a finding is inapposite.  As noted, to set aside his conviction under Section 2255, the Petitioner must prove that his argument is meritorious; it is not enough to show

---

[4]Sergeant Karssen's testimony at the evidentiary hearing was substantially similar to the testimony his partner, Officer Sweeney, at Petitioner's trial.

that he may have succeeded.    Petitioner cannot meet his burden.  Therefore, Petitioner's Motion

should be denied with regard to this issue.[4]

### b.      Sentencing Guidelines and Plea Offers

Petitioner next asserts that Short's legal representation was woefully inadequate from the

inception:

> In this case, trial counsel failed to adequately research the applicable sentence guidelines, he failed to research the possibility of consecutive sentencing as to two of the charges,[1] and he failed to apprise Mr. Sain of increased sentencing exposure in the event of a conviction following trial. (Docket no. 59 at 20-21, 24, 30-31, 36-38, 51-52, 56.)

> > [1]Here, Judge Zatkoff had the option of imposing a consecutive sentence as to Count One, possession with intent to distribute marijuana, and Count Two, being a felon in possession of a firearm, and he did impose those two sentences consecutively. Short admits he did not understand that this was a possibility and that he never warned Sain that it was a possibility. (*Id.* at 34.)

> Short's belief about the sentence Sain would receive in this case (two to five years) grossly underestimated Sain's eventual sentence of 168 months. (*Id.* at 41-43.) Counsel admits that he did not even convey the last (best) plea offer in this case to Sain, one that would have limited Sain's sentence to a range of between 41 and 51 months.  (*Id.* at 13-14, 24, 52-53.)  In addition, he failed to give Sain any advice as to whether trial, or a Rule 11 plea agreement, was the better course.  (*Id.* 52.)  Short admits that notwithstanding Sain's early reluctance to provide information to, or cooperate with, the government, Sain would have been willing and able to plead guilty, he would have been interested in cooperating with the government, and he would have been willing to debrief with the government about his co-defendants' criminal activities had he been properly advised of the government's last best plea offer, and the dire likely sentence consequences in these two cases if Sain proceeded to trial. (*Id.* at 23, 44-46, 52-53, 58.)

> Short's communication with Sain was woefully inadequate. Despite the seriousness of these charges, it is uncontested that counsel never visited Sain in jail pretrial, he did not take calls from Sain while Sain was incarcerated, and he did not

---

[4]While the undersigned recommends denying Petitioners Motion with regard to Short's failure to file a Motion to Suppress as a disparate issue, as discussed, *infra*, the Court should consider Short's conduct in this regard as part of his overall representation.

return Sain's letters. Short saw Sain only in the bullpen of the federal building on those infrequent occasions when Sain had a court appearance. (*Id.* at 10-11, 55-56.) Short was unfamiliar with the case facts, misstating them in his opening statement to jurors. Short was unaware that Sain's group was consuming marijuana earlier in the evening prior to Sain's arrest. (*Id.* at 28-29.) Short admits that it is likely that he did not even interview Sain's trial witnesses until the second day of trial. (*Id.* at 29-30.) Short concedes that following trial, he only saw Sain at the required meeting with the probation department.  (*Id.* at 12.)  Short never reviewed the presentence report with Sain, and a frustrated Sain asked Judge Zatkoff to replace Sain on the initial date set for sentencing. (Docket no. 46 at 7-8.)[3]

> [3]Short's pattern was the same in the contemporaneous case with Judge Roberts. Sain complained to Judge Roberts that he had had no contact with Short prior to trial, Short did not dispute that claim, and Short was removed (by an angry Judge Roberts) as counsel in that case on the day set for trial, with jurors waiting in the wings. (Docket no. 25-6, at 94-107.)

> Counsel admitted to being inexperienced in federal court. He has never been admitted to the Criminal Justice Act panel.  (*Id.* at 15.)  His conduct in this case, including his failure to properly advise Sain during the pretrial/plea phase of this case, and his behavior involving the conflict of interest . . . resulted in his suspension and his permanent ban from admission in federal court.  (*Id.* at 9, 12-13, 15.)  He admits that he provided constitutionally inadequate representation. (*Id.* at 31.)

(Docket no. 58 at 3-6 (footnote no. 2 omitted) (citations reformatted).)

"In today's criminal justice system, . . . the negotiation of a plea bargain . . . is almost always the critical point for a defendant." *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012).  "The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities that . . . must be met to render the adequate assistance of counsel that the Sixth Amendment requires." *Id.*  Thus, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 1408.  Moreover, "[a] criminal defendant has a right to expect at least that his attorney will . . . explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Smith v. United States*, 348 F.3d 545,

553 (6th Cir. 2003).  As the *Smith* court noted, "we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios."  *Id.*

Notably, the Government does not dispute Petitioner's assertion that Short's conduct was deficient under the performance prong of *Strickland*.  Indeed, the Government cannot dispute that where Short believed Petitioner was only exposed to a maximum penalty of 15 years in prison (10-year concurrent terms under Counts I and II and 5 consecutive years under Count III), he could not possibly have conveyed to Petitioner that he was exposed to a potential 25-year sentence.  Likewise, the Government cannot dispute that Short failed to present, at least, the second plea offer to Petitioner.  Instead, the Government contends that Short's deficient performance did not result in any prejudice.

To meet the prejudice prong of *Strickland*, a defendant must demonstrate (1) "a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel," and (2) " a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it."  *Frye*, 132 S.Ct. at 1409.  That is, "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."  *Id.* (citing *Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance'")).

In *Smith*, the petitioner was presented with a plea offer that would have exposed him to a maximum sentence of 20 months, but he declined the offer.  After professing his innocence throughout his trial, the petitioner was convicted and sentenced to multiple, concurrent terms of 262

17

months in prison.  *Smith*, 348 F.3d at 548-49.  Nevertheless, the court found that the petitioner's counsel's failure to discuss the full extent of the petitioner's exposure warranted further review.  The court noted that even though the petitioner's statement that he would have accepted the plea offer was self-serving, he had declined the plea offer, he had professed his innocence throughout trial, and his own attorney said that he would not have accepted the offer, the "substantial disparity" between the plea offer and his ultimate sentence was strong evidence that he would have pleaded guilty if he had been "competently advised."  *Id.* at 552 (citing *Griffin v. United States*, 330 F.3d 733, 739 (6th Cir. 2002); *Magana v. Hofbauer*, 263 F.3d 542, 552-53 (6th Cir. 2001); *United States v. Day*, 969 F.2d 39 (3rd Cir. 1992); *United States v. Gordon*, 156 F.3d 376, 377-81 (2d Cir. 1998)).  Likewise, while Sain professes his innocence and relies on his own self-serving statement to support his assertion that he would have accepted the Government's offer, the substantial disparity between the Government's plea offers (87 to 93 months and 41 to 51 months) and his ultimate sentence (168 months) is strong evidence in support of his assertion.  Moreover, unlike the petitioner in *Smith*, Sain was unaware of the Government's plea offer, and Short believes that he would have accepted the offer had he been properly advised.  Thus, the undersigned finds that Petitioner has met his burden of showing a reasonable probability that he would have accepted the plea offer.

The Government's position, however, rests primarily on the theory that Judge Zatkoff would not have accepted Petitioner's plea agreement because the agreement itself was based on a miscalculation of the sentencing guidelines.  (Docket no. 57 at 3-6.)  Specifically, with regard to the first plea agreement, the Government asserts that the offer of 87-93 months was based on the erroneous determination that Petitioner had a total offense level of 17 and a criminal history category of II when his actual criminal history placed him in category III with a total offense level of 20.  (*Id.*

18

at 3-4.)  Thus, the Government contends, the proper sentencing guidelines would have been between 101-111 months. (*Id* at 4.)  And because Judge Zatkoff elected to impose a sentence of 168 months (when the guideline range was calculated at 117-131 months after trial), "there is no reasonable probability that Judge Zatkoff would have accepted" a plea offer that was below the guideline range. (*Id.* at 4-5.)  The Government's argument, however, fails to consider that if Petitioner had accepted the plea agreement, Judge Zatkoff would have been presented with a cooperating defendant and a recommendation for a lower sentence by the Government, both of which the undersigned believes would have influenced his sentencing decision.

More importantly, though, even accepting the Government's position with regard to the first plea offer as correct, the circumstances surrounding the Government's second plea offer are more troubling.  As the Government concedes, the second plea offer would have dismissed Count III of the Indictment, which carried a mandatory five-year sentence.  (Docket no. 57 at 5-6.)  Thus, "[t]he guideline range without the mandatory consecutive minimum of five years from Count Three would have been 41-51 months."  (Docket no. 57 at 5-6.)  Faced with Petitioner being sentenced to a term of imprisonment more than three times the calculated guideline range under the plea offer, the Government blindly asserts that even though "Judge Zatkoff would have started from a much lower guideline range[,] . . . [g]iven his comments in his sentencing decision, it is fair to conclude that Judge Zatkoff would have rejected a plea agreement that dismissed a count carrying a mandatory consecutive sentence of five years."  (*Id.* at 6.)  As Petitioner asserts, "[a] decision as to whether or not to charge a §924(c) gun count . . . or bargain with the defense to dismiss it is something that is routinely left to a prosecutor's discretion."  (Docket no. 58 at 7.)  Regardless of whether Judge Zatkoff chose to vary Petitioner's sentence upward after trial, there is no reason to believe that he

19

would have rejected the Government's plea offer if Petitioner had accepted it before trial. To the contrary, given the nature of the Indictment, there is a reasonable probability that Judge Zatkoff would have deferred to the prosecutor's discretion and accepted the Government's recommendation. Therefore, the undersigned finds that Petitioner has met his burden under *Strickland*, and his Motion should be granted.

### c.   Concurrent Representation

Petitioner next asserts that Short violated his duty of loyalty by representing him and his brother, Lenardo Sain, as co-defendants in the matter before Judge Roberts; he further alleges that this conflict carried over to the instant matter because if Short had encouraged him to plead guilty here, Petitioner would have been required to disclose information that would have been detrimental to his brother (Short's other client) in the case before Judge Roberts. The undersigned agrees.

"[T]o establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). But the appropriate legal standard is not the traditional ineffective-assistance standard set forth in *Strickland*. Instead, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." (*Id.* at 349-50.) The Government does not address this issue in its post-hearing brief. More importantly, though, Short's testimony is dispositive of this issue.

At the September 5, 2014 hearing, Short testified that he actively engaged in a conflict of interest regarding the concurrent representation of Cordell and Lenardo Sain. (Docket no. 59 at 9-

10, 12.) And most importantly, he acknowledged that he could not have ethically recommended that either defendant cooperate with the Government because that defendant would have had to debrief against his other client. (*Id.* at 18-19, 19-20.) Thus, the ethical dilemma presented by Short's concurrent representation was part and parcel with his failure to present the plea agreements to Petitioner. As discussed, it is undisputed that Short did not present Petitioner with the Government's plea offers, but his testimony also implies that he did not believe that he could encourage Petitioner to accept such an agreement even if he had, because doing so would have harmed his other client. Notably, Lenardo Sain accepted a plea offer in the Judge Roberts case once he had new counsel. *Bonas*, No. 07-20309, docket no. 209. Thus, the undersigned finds that Short's conflict of interest actually affected the adequacy of his representation. Petitioner's Motion should be granted.

### d.      The Totality of Short's Representation

In sum, regardless of the disparate issues raised by Petitioner in his Motion and his supplemental briefs, the undersigned finds that Short's representation in this matter was so woefully inadequate that Petitioner was deprived of his Sixth-Amendment right to counsel. Throughout his representation of Petitioner both in this instant matter and in the case before Judge Roberts, Short utterly failed in his responsibility to communicate with his client, he ignored evidence and witnesses that could have resulted in his client's acquittal, he failed to move for the suppression of evidence due to his ignorance of the law and his complete failure to investigate the facts surrounding the Saratoga house, he failed to discuss with his client (and it appears he did not understand) the extent of his client's potential sentencing exposure, he did not convey the Government's plea offer to his client, and he engaged in a blatant conflict of interest. At a minimum, "there is a reasonable probability that, but for counsel's unprofessional errors, the result [of this matter] would have been

different." *See Strickland*, 466 U.S. at 694.

### D.    Conclusion

For the reasons stated above, Petitioner's Motion to Vacate under 28 U.S.C. § 2255 (docket no. 38) should be **GRANTED IN PART AND DENIED IN PART**.  The Court should grant Petitioner's Motion with regard to his ineffective-assistance of counsel claims and deny his Motion with regard to his Tenth Amendment and Fourth Amendment claims.  Additionally, having considered it as part of Petitioner's argument, the Court should **GRANT** Petitioner's Motion for Leave to File a Memorandum of Law (docket no. 37).

## III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS:</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later

22

than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: October 23, 2014               s/ Mona K. Majzoub
                                          MONA K. MAJZOUB
                                          UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

       I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: October 23, 2014               s/ Lisa C. Bartlett
                                          Case Manager